**WO**                                                                                    JDN

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeffrey James Faulkner, | No. CV 10-2441-PHX-SMM (JFM) |
| Plaintiff, | |
| vs. | **MEMORANDUM OF DECISION AND ORDER** |
| Charles Ryan, | |
| Defendant. | |

Plaintiff Jeffrey James Faulkner filed a civil rights action under 42 U.S.C. § 1983 against Arizona Department of Corrections (ADC) Director Charles Ryan (Doc. 1). Before the Court are the parties' cross-motions for summary judgment (Docs. 31, 47).

The Court will deny Plaintiff's motion, grant Defendant's motion, and terminate the action.

## I.    Background

Plaintiff's claims concern his confinement at the ADC Eyman Complex-Browning Unit, a supermax prison facility in Florence, Arizona (Doc. 6 at 1).  In Count I of his Complaint, Plaintiff alleged that Defendant violated Plaintiff's Fourteenth Amendment right to due process by confining Plaintiff indefinitely in punitive, isolated administrative detention pursuant to a policy enforced and upheld by Defendant (id. at 3-3A).  Plaintiff claimed that because his living conditions impose an atypical hardship, he has a liberty interest in avoiding indefinite confinement there.  Plaintiff alleged that he receives a reclassification hearing just once every twelve months and this hearing is pretextual and

1   based solely on his existing security-threat-group (STG) validation (id.).

2       In Count II, Plaintiff alleged that Defendant's debriefing policy violates the Eighth

3   Amendment prohibition against cruel and unusual punishment because the policy requires

4   Plaintiff to become a snitch, which threatens Plaintiff's safety (id. at 4-4A).  Plaintiff averred

5   that by refusing to debrief, he will remain confined indefinitely in conditions that impose an

6   atypical and significant hardship (id.).

7       The parties now move for summary judgment on both counts.   Plaintiff seeks

8   summary judgment on the grounds that (1) Defendant's reclassification procedure does not

9   satisfy due process; (2) the debriefing policy requires Plaintiff take on a snitch label, which

10  would put his life at risk; (3) the Step Down Program (SDP) is not an adequate alterative to

11  periodic reviews; (4) Plaintiff has standing to challenge the SDP and debriefing process;

12  (5) Defendant is not entitled to qualified immunity, and (6) under the continuing-violations

13  doctrine, Plaintiff is entitled to damages from the date of his validation (Doc. 31).

14      Defendant filed a combined Response and Cross-motion for Summary Judgment

15  (Docs. 46-47).  Defendant opposes Plaintiff's motion and contends that (1) the annual review

16  of Plaintiff's status comports with due process; (2) debriefing does not violate Plaintiff's

17  Eighth Amendment rights; (3) there is no requirement for an alternate path to debriefing,

18  such as the SDP; (4) the conditions of confinement at the Browning Unit are constitutional;

19  (5) Defendant is entitled to qualified immunity; and (6) Plaintiff's claim is not subject to the

20  continuing-violations doctrine (Doc. 47).

21      Although Defendant argues that the conditions of confinement at the Browning Unit

22  are constitutional, and he provides a considerable amount of evidence to support this

23  argument, Plaintiff's Complaint does not include a conditions-of-confinement claim.  As set

24  forth above, and as Plaintiff's emphasizes in his briefing, he never asserted an Eighth

25  Amendment conditions claim (Doc. 50 at 3; Doc. 58 at 27).  Rather, he alleged (1) that his

26  retention in the Browning Unit violates Fourteenth Amendment due process, and (2) that the

27  debriefing requirement violates the Eighth Amendment (Doc. 50 at 3).  In its analysis, the

28  Court will consider only those facts and arguments related to these two claims.

**II.      Summary Judgment Legal Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  Under summary judgment practice, the movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact.  <u>Celotex</u>, 477 U.S. at 323.

If the movant meets its initial responsibility, the burden then shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 250 (1986) ; <u>see</u> <u>Triton Energy Corp. v. Square D. Co.</u>, 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its favor, <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial."  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (internal citation omitted); <u>see</u> Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial.  <u>Anderson</u>, 477 U.S. at 249.  The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor."  <u>Id.</u> at 255.  But if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted.  <u>Id.</u> at 248-49. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989).  <u>See</u> <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007) ("[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues

1  of fact and defeat summary judgment").

2  **III.   Count I—Fourteenth Amendment Due Process Claim**

3      **A.   Facts**

4        **1. STG Validation, Debriefing, Annual Reviews, and Step-Down Program**

5        In support of his motion, Plaintiff submits a separate Statement of Facts (PSOF) (Doc.

6  32), which is supported by his own declaration (Doc. 33), and copies of ADC policies,

7  documents from Plaintiff's validation, Defendants' Responses to Interrogatories in another

8  case, other court orders, and grievance documents (Doc. 32, Exs. 1-9).  Defendant submits

9  his own separate Statement of Facts (DSOF), supported by the declaration of two ADC

10 officials and various attachments (Doc. 48, Exs. A-B).[1]  Plaintiff filed a reply statement of

11 facts in response to DSOF (Doc. 60, PRSF).

12       The Court notes that Plaintiff presents extensive argument to support his claim that

13 the conditions at the Browning Unit constitute an atypical and significant hardship that create

14 a liberty interest and implicate due process protections (see Doc. 31 at 7-10; Doc. 50 at 4-7).

15 There is no dispute, however, by Defendant as to the severity of the conditions at the

16 Browning Unit, nor does Defendant argue that Plaintiff is not entitled to due process before

17 his placement or his retention in the unit.  Instead, Defendant argues that his retention policy

18 provides all the process due.  As such, the Court need not address whether the Browning Unit

19 conditions constitute an atypical and significant hardship.

20       The parties' disputed and undisputed factual assertions relevant to Count I are

21 _____

22     [1]The paragraphs in DSOF do not correspond to those in PSOF as required under Local
Rule of Civil Procedure 56.1(b) (see Doc. 48).  Because Plaintiff does not object to DSOF
23 on procedural grounds, and the parties factual disputes can—for the most part—be
24 discerned, the Court will consider DSOF.  Also, the courtesy copies submitted by
Defendant are not printed from the Court's Case Management/Electronic Case Filing
25 system—to reflect the page number—as required by the District of Arizona Case
Management/Electronic Case Filing (CM/ECF) Administrative Policies and Procedures
26 Manual.  See Manual § 2 ¶ D(3).  These deficiencies made the Court's analysis much
27 more burdensome.  Defense counsel is notified that in the future, he must comply with all
Local Rules of Civil Procedure and the CM/ECF Administrative Manual.  See LRCiv
28 83.1(f)(1)(A).

summarized as follows:

In 1991, the ADC established an STG policy in an effort to control prison gang activity in Arizona's prisons (DSOF ¶ 1). The policy provides for the identification and certification of prison gangs and the identification and validation of inmate STG members (id. ¶¶ 3-4).

Under this policy, an STG "Suspect" is an inmate believed to be involved in an STG (id. ¶ 25). To be identified as an STG Suspect, there must be documentation of certain specific criteria such as self-admission, tattoos, publications, court records, group photos, association and contacts (id. ¶ 26; PSOF ¶ 2). Once an inmate is identified as a Suspect, the Special Security Unit staff take steps to determine if there is sufficient evidence to meet the validation criteria (DSOF ¶ 28, 31). If so, an STG Validation Committee conducts an STG Validation Hearing (id. ¶ 36). The inmate receives notice of the hearing and may choose whether to appear and whether to request witnesses (id. ¶ 38; PSOF ¶ 1).

Once an inmate has been validated as a STG member through the STG validation process, he may appeal the validation decision, choose to renounce his STG membership through the debriefing process, or accept his validation and not renounce his STG membership (DSOF ¶ 42; PSOF ¶ 1). A validated inmate is considered an ongoing threat to prison security and, therefore, is segregated and assigned to be housed at the maximum-security Browning Unit until the inmate is released from prison, renounces his STG membership and satisfactorily debriefs, or successfully completes the SDP (DSOF ¶ 48).

Inmates housed at the Browning Unit receive an annual review by Classification staff (id. ¶ 46). The review consists of an inquiry as to (a) whether the inmate is still associated with an STG or (b) whether the inmate has disassociated himself from the STG, renounced his gang affiliation, and is sincerely willing and able to debrief (id.).

Renunciation is when a validated STG member renounces his STG affiliation (id. ¶ 50). This is followed by the debriefing process, in which an STG Unit staff member documents the claim that an inmate is no longer a member of an STG (id. ¶ 51). The objectives of the debriefing process are to (1) learn enough about the validated STG member

and the STG to determine whether the inmate has withdrawn from the STG, (2) provide information regarding the STG's structure and activity that would adversely impact the STG and assist in management of the STG population, and (3) provide sufficient information to determine if the inmate requires protection from other STG members or suspects (id. ¶ 52).[2] A validated STG member who renounces membership and satisfactorily debriefs is immediately housed in Protective Segregation (PS) and is then reviewed for permanent PS status (id. ¶ 55). Plaintiff states that PS does not guarantee protection for an inmate (Doc. 60, PRSF ¶ 55).

A validated STG member can request to renounce and debrief at any time (id. ¶ 59). There is no waiting period to request to debrief, unless the inmate previously requested to debrief and failed to satisfactorily do so, in which case the inmate is not eligible to debrief again for a period of six months (id.).

Defendant states that as an alternative to the debriefing process, a validated STG member may be able to leave the Browning Unit through the SDP, which provides an inmate the opportunity to demonstrate that he is not involved in STG activity (id. ¶ 62). The SDP began in March 2006 and was revised in November 2009 (id. ¶¶ 62-63).

Under both versions of the SDP, an inmate must have completed a continuous 24-month period where he did not participate in any documented gang activity, and he must make a written request to participate in the program (id. ¶¶ 65, 82-83; PSOF ¶ 1). The SDP also requires a complete comprehensive investigation of the inmate and a polygraph examination (DSOF ¶ 83). There are different phases in the SDP that provide inmates progressively more freedom in small increments (id. ¶ 89). An inmate must complete the SDP within 18 months of the date of entry into the program (id. ¶ 87).

### 2. Plaintiff's Validation and Annual Reviews

Plaintiff came into ADC custody in 1996, at which time he was classified at level 3/4

---

[2]Plaintiff disputes Defendant's stated objectives of the debriefing process and asserts that the process allows ADC to use any incriminating information against the prisoner (Doc. 60, PRSF ¶ 52).

1   and housed in a general population unit (Doc. 33, Pl. Decl. ¶ 4).  Plaintiff remained in general

2   population for four years until 2000, when he received notice that he was charged with

3   membership in the Aryan Brotherhood (id. ¶¶ 5-6).[3]  Plaintiff was validated as an STG

4   member on April 28, 2000 (Doc. 32, PSOF ¶ 2).  He did not debrief because he had no

5   information to provide and he feared for his safety if he became a prison snitch (Doc. 33, Pl.

6   Decl. ¶ 6).  Plaintiff has received annual classification reviews for the last 11 years (Doc. 33,

7   Pl. Decl. ¶ 7; Doc. 32, PSOF ¶ 3).  For each review, a Corrections Officer III arrives at

8   Plaintiff's cell front, hands Plaintiff a classification document that is pre-stamped "STG

9   Validated," and Plaintiff signs the document (Doc. 33, Pl. Decl. ¶ 7).

10   Plaintiff has requested to enter the SDP six times but been denied each time (Doc. 60,

11   PRSF ¶ 82).

12   **B.   Arguments**

13   **1. Plaintiff's Motion**

14   Plaintiff argues that administrative segregation cannot be used as a pretext for

15   indefinite confinement; thus, he is entitled to some sort of periodic review (Doc. 31 at 11-12).

16   He submits that the annual re-classification reviews he receives are meaningless because they

17   merely consist of a CO III "hold[ing] the alleged hearing in front of Plaintiff's cell" by

18   asking Plaintiff to sign a pre-typed classification review document that contains one

19   phrase—"STG validated" (id. at 12).  Plaintiff states that his custody level is then overridden

20   to a level 5 and he remains confined in the Browning Unit for another year (id.).

21   According to Plaintiff, the 2001 decision in Koch v. Lewis put Defendant on notice

22   that STG status alone, absent any misconduct, is not enough to justify indefinite detention

23

24

25

26   [3]Defendant objects to Plaintiff's Declaration ¶¶ 5-6, citing "relevance" and

27   "argumentative" (Doc. 65 at 10).  The Court finds that Plaintiff's statements are based on
personal knowledge; relate to his STG validation and classification to maximum custody,
which relate to Plaintiff's claims; and are not argumentative.  Defendant's objections are

28   overruled.

1   in the Browning Unit (id. at 12-13, citing 216 F. Supp. 2d 994 (D. Ariz. Aug. 30, 2001)).[4]

2   Plaintiff further maintains that the Ninth Circuit's decision in Hernandez v. Schriro held that

3   Defendant's classification practices were insufficient (id. at 13, citing 357 F. App'x 747 (9th

4   Cir. 2009)).

5          Plaintiff contends that he is classified to maximum custody pursuant to a non-

6   discretionary override based on his STG validation (Doc. 32, PSOF ¶ 4(2)).  He states that

7   annual classification overrides amount to indefinite administrative segregation and, therefore,

8   he is entitled to more process than that required for his initial placement and, specifically, he

9   must receive periodic reviews that are more that "meaningless gestures." (Doc. 31 at 13-14,

10   citing Toussaint v. McCarthy, 801 F.2d 1080, 1101-02 (9th Cir. 1986), abrogated in part on

11   other grounds by Sandin v. Conner, 515 U.S. 472 (1995)).  Plaintiff submits that due process

12   requires that he be provided an opportunity to challenge the initial validation and that a STG

13   Committee re-evaluate his status based on, for example, any evidence of new STG

14   misconduct (id. at 14).  Plaintiff alleges that his STG validation was based solely on alleged

15   membership and he argues that Defendant cannot retain him in Browning Unit absent any

16   evidence of misconduct or evidence that he poses a danger to other prisoners (id. at 15).

17          Plaintiff also suggests that yearly classification reviews are insufficient.  He submits

18   Defendant's response to an interrogatory inquiring as to how often a validated STG inmate

19   in Browning Unit has classification reviews (Doc. 32, Ex. 4, Def. Interrog. Resp. No. 3).

20   Defendant responded that pursuant to the Inmate Classification Policy, Department Order

21   (DO) 801, all inmates classified to maximum custody are to be reviewed every 180 days and

22

23          [4]Koch was a case with almost identical facts brought by an inmate housed in the

24   Special Management Unit (SMU) II, which is now the Browning Unit (see Doc. 48, DSOF
    ¶ 47).  216 F. Supp. 2d at 997-98.  The district court found that Koch's status as a gang

25   member was insufficient, absent any evidence of overt acts of misconduct, to justify
    indefinite detention in SMU III, and the August 30, 2001 Order granted injunctive relief

26   and directed that Koch be released from SMU II.  Koch, 216 F. Supp. 2d at 1007.  After

27   Koch's release from prison, the Ninth Circuit vacated the district court's orders in their
    entirety; thus, the Koch decision is not binding on this Court.  399 F.3d 1099, 1101 (9th

28   Cir. 2005).

1  annually thereafter unless the maximum custody classification is pursuant to an override—in

2  which case, the inmate must be reviewed every 180 days (Doc. 32, PSOF ¶ 4(1), 5; Ex. 4,

3  Def. Interrog. Resp. No. 3).  Plaintiff again notes that his classification is pursuant to a non-

4  discretionary override based on his STG validation (id., PSOF ¶ 4(2)).

5          Plaintiff argues that debriefing is not a viable alternative because debriefing requires

6  a prisoner to divulge information about the STG and become a snitch (Doc. 31 at 19).  He

7  further argues that the SDP is not an adequate alternative because Defendant has established

8  so many eligibility hurdles, including "unwritten" criteria that cannot be challenged, that the

9  program is effectively unavailable (id. at 20-22).  Plaintiff therefore contends that debriefing

10  and the SDP are not reasonable alternatives that, in combination with annual reviews, satisfy

11  due process (id. at 22-23).

12                    **2.  Defendant's Response/Cross-motion**

13          Defendant contends that the annual review of Plaintiff's STG status satisfies due

14  process (Doc. 47 at 7).  Defendant states that Plaintiff is in administrative segregation solely

15  because of his STG validation; thus, the only way out is to separate himself from the STG

16  either through debriefing or the SDP (id.).  Defendant notes that Plaintiff may renounce and

17  debrief at any time (id.).  Defendant asserts that Plaintiff has not made a request to debrief

18  and he has never applied for participation in the SDP (id. at 8, 15).

19          Defendant explains that Plaintiff can leave the Browning Unit only if his classification

20  changes, i.e., if he stops being an STG-member (id.).  Defendant states that a STG member's

21  classification cannot change unless he renounces and debriefs or completes the SDP (id.).

22  Defendant therefore contends that the frequency of reviews for an STG member is not as

23  important as for an inmate in administrative segregation for other reasons (id.).  Defendant

24  further contends that as long as an inmate is an STG member, he is a security risk (id. at 9).

25  Defendant states that Toussaint, which held that annual reviews were insufficient, is

26  distinguished from this case because there, the inmates were not STG members (id., citing

27  Toussaint v. Rushen, 553 F. Supp. 1365, 1381 (D.C. Cal. 1983)).  Defendant notes that in a

28  case decided since Toussaint, the United States Supreme Court approved annual reviews for

1  inmates in a facility almost identical to the Browning Unit (id., citing Wilkinson v. Austin,

2  545 U.S. 209 (2005)).

3       Defendant asserts that an annual review is not for Plaintiff to re-argue the initial

4  placement decision; rather, it is to determine whether the reasons that led to his placement

5  continue to exist (id. at 10).  Therefore, according to Defendant, the review does not require

6  officials to consider new evidence (id.).

7       In response to Plaintiff's claim that STG membership absent any misconduct is

8  insufficient to justify his retention, Defendant relies on the holding in Bruce v. Ylst, which

9  upheld an inmate's gang validation based solely on some evidence of membership; there was

10  no evidence of activity (id. at 12, citing 351 F.3d 1283, 1287-88 (9th Cir. 2003)).  Defendant

11  concludes that, based on the holdings in Bruce and Toussaint, membership in an STG is

12  enough by itself to justify retention in the Browning Unit (Doc. 47 at 12).

13       Defendant argues that debriefing as the sole method to exit the Browning Unit

14  satisfies the test established in Matthews v. Eldridge to determine whether particular

15  procedures afford sufficient due process (id. at 16, citing 424 U.S. 319, 335 (1976)).

16  According to Defendant, Plaintiff's interest is less significant because he is a convicted

17  prisoner (Doc. 47 at 16).  Defendant maintains that there is no risk of erroneous continuation

18  in Browning Unit confinement because there is no potential error in determining at the

19  annual review whether Plaintiff has debriefed or not (id.).  Lastly, Defendant asserts that the

20  state has an interest in preventing gang activity and the STG procedures serve that interest

21  (id. at 17).

22              **3.  Plaintiff's Reply and Response to Defendant's Motion**

23       Plaintiff argues that Defendant incorrectly relies on the holding in Bruce because the

24  "some evidence" standard in Bruce determines whether due process is satisfied upon the

25  *initial* decision to place an inmate in the Browning Unit (Doc. 50 at 8).  Plaintiff states that

26  as to the process due to retain him in administrative segregation, there must be periodic

27  review of his status more than annually and there must be evidence that he poses a danger

28  (id. at 9, citing Toussaint, 801 F.2d at 1101)).

1     Plaintiff contends that under <u>Toussaint</u>, the decision to retain a prisoner in

2   administrative segregation must be based on facts relating to that particular prisoner (Doc.

3   58 at 18-19, citing 801 F.2d at 1101).  He therefore argues that Defendant cannot retain him

4   in the Browning Unit based solely on his STG validation (<u>id.</u> at 19; Doc. 50 at 11).  Plaintiff

5   asserts that Defendant's general claim that STG validated prisoners are the "worst of the

6   worst" is insufficient as to *Plaintiff's* dangerousness (Doc. 58 at 18).

7     Plaintiff reiterates that the purported avenues out of the Browning Unit are effectively

8   unavailable (<u>id.</u> at 9).  Plaintiff states that to successfully debrief, he must provide ADC

9   information about the STG activities and structure; yet, he does not possess any of this

10   information and, thus, cannot debrief (Doc. 58 at 8).

11     As to the other option, Plaintiff claims that—contrary to Defendant's assertion—he

12   has formally requested to participate in the SDP six times since 2006, but been denied each

13   time (<u>id.</u> at 9).  Plaintiff submits the copy of a October 2010 inmate-letter response from an

14   ADC Sergeant who answered Plaintiff's inquiry about the SDP (Doc. 60, Ex. 4).  The

15   Sergeant's response indicates that at that time, Plaintiff was not eligible to participate in the

16   program due to suspected STG activity in the prior two years (<u>id.</u>).  The Sergeant's response

17   also states "[y]our sixth request to participate in the Step-down program has been duly noted

18   . . . . ." (<u>id.</u>).  Plaintiff states that SDP denials can be based on unsupported allegations of

19   STG activity and he is not provided any opportunity to challenge such allegations (<u>id.</u>).  He

20   argues that this constitutes a denial of due process (<u>id.</u>).

21     Plaintiff concludes by reasserting that ADC's annual review is "nothing more than a

22   pretextual meaningless gesture" and, as to his claim in Count I, there exist genuine issues of

23   material fact for a jury to decide (<u>id.</u> at 19-20).

24           **4. Defendant's Reply**

25     In his reply, Defendant again states that Plaintiff can leave the Browning Unit at any

26   time by debriefing and that, without debriefing, Plaintiff receives an annual review by

27   Classification staff that consists of an inquiry as to whether Plaintiff is still associated with

28   an STG or whether he has disassociated himself, renounced his gang affiliation, and is

1   willing and able to debrief (Doc. 65 at 1).  Defendant maintains that the annual review is

2   constitutionally proper because Plaintiff can renounce and debrief at any time and, since he

3   can exit Browning Unit by this process, his placement is not indefinite (id. at 2).

4   Defendant re-argues that debriefing as the sole method to exit the Browning Unit

5   satisfies the Matthews test (id. at 2-3).

6   Defendant asserts that Plaintiff's claim that he cannot debrief is pure speculation

7   because he has never attempted to debrief (id. at 4).  Defendant submits that because Plaintiff

8   has already been validated as a gang member, his assertion that he cannot debrief because

9   he is not gang member is an improper "backdoor attack on the validation process" (id., citing

10  Walker v. Schriro, 2006 WL 2772845, at *4 (D. Ariz. Nov. 23, 2006)).

11  Defendant also maintains that the SDP program is available but only after an inmate

12  meets certain criteria and does not participate in STG activity (id. at 5).  Defendant argues

13  that any dispute over whether Plaintiff meets the criteria and should have been admitted to

14  the SDP program is not material because there is no constitutional requirement for a way

15  other than debriefing to exit the Browning Unit (id. at 5-6).

16  **C.    Legal Standard**

17  The Due Process Clause of the Fourteenth Amendment prohibits the states from

18  "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const.

19  amend. XIV, § 1.  To determine whether a procedural due process violation has occurred,

20  a court engages in a two-step analysis.  First, a court looks to whether the person possesses

21  a constitutionally-cognizable liberty interest with which the state has interfered.  Sandin, 515

22  U.S. at 485-87.  Second, if the state has interfered with a liberty interest, a court looks to

23  whether this interference was accompanied by sufficient procedural and evidentiary

24  safeguards.  Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989).

25  It is well-settled that placement in maximum security segregation units implicates a

26  liberty interest requiring due process protections.  Wilkinson, 545 U.S. at 224.  An inmate

27  may be deprived of his liberty interest as long as he is accorded the proper procedural

28  protections.  For the initial decision to place an inmate in maximum custody, due process is

generally satisfied by notice of the factual basis for the placement and an opportunity to be heard. Id. at 224-226; Hewitt v. Helms, 459 U.S. 460, 476 (1983), overruled in part on other grounds by Sandin, 515 U.S. 472. These procedural mechanisms serve to avoid the risk of an erroneous deprivation; "[r]equiring officials to provide a brief summary of the factual basis for the classification review and allowing the inmate a rebuttal opportunity safeguards against the inmate's being mistaken for another or singled out for insufficient reason." Wilkinson, 545 U.S. at 226.

After an inmate is placed in maximum security segregation, he is entitled to "some sort" of periodic review of his status. See Hewitt, 459 U.S. at 477 n. 9 ("administrative segregation may not be used as a pretext for indefinite confinement of an inmate. Prison officials must engage in some sort of periodic review of the confinement of such inmates"). To determine whether the periodic review afforded Plaintiff conforms to due process requirements, the Court must consider "[1] the private interest that will be affected by the official action; [2] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Wilkinson, 545 U.S. at 224-25 (citing Matthews, 424 U.S. at 335).

### D.   Analysis

In Hernandez v. Schriro, a case involving an STG inmate housed in the same facility as Plaintiff, the Ninth Circuit stated that annual reviews alone are insufficient to satisfy due process. 357 F. App'x at 749 (citing Toussaint, 801 F.2d at 1101). On remand in Hernandez, this Court found that annual reviews, combined with the option to debrief at any time, satisfied due process. 2011 WL 2910710, at *8 (D. Ariz. 2011). The Court observed that no prior case had held that debriefing as the sole method of leaving administrative segregation violates due process. Id., at *9 (citing Terflinger v. Rowland, 76 F.3d 388, at *2 (9th Cir. 1996)).

Here, Plaintiff challenges whether debriefing is available to him; whether the annual

reviews provided to him are meaningless gestures; and whether reviews annually instead of every 180 days are sufficient.  Defendant maintains that debriefing is available, the annual reviews are not meaningless or pretextual, and yearly reviews are sufficient.  The Court applies the Matthews' three-part test to determine whether Plaintiff's annual review conforms to due process requirements.  See Wilkinson, 545 U.S. at 225; see also Matthews, 424 U.S. at 319.

The first prong examines Plaintiff's private interest in remaining free from confinement at the Browning Unit.  As Defendant notes, this interest is not comparable to the right to be from confinement at all, because prisoners automatically have their liberty curtailed (see Doc. 65 at 3).  See Wilkinson, 545 U.S. at 225.  Here, in light of the Browning Unit conditions, Plaintiff's interest is more than minimal but it is considered "within the context of the prison system and its attendant curtailment of liberties."  Id.

The second prong addresses the risk of an erroneous deprivation of that private interest under the procedures in place—annual reviews and the debriefing option.  See id. Defendant does not dispute Plaintiff's description of the annual review procedure, which is that it entails nothing more than a CO III presenting a pre-stamped "STG Validated" form for Plaintiff to sign.  Defendant asserts, however, that this review is objective and that no additional safeguards are required to determine whether Plaintiff has renounced and debriefed (Doc. 65 at 3).

Although the periodic review provided to Plaintiff appears cursory, Plaintiff does not dispute that he receives this review each year (see Doc. 48, DSOF ¶ 46; Doc. 60, PRSF ¶ 46). As this Court explained in Hernandez after remand, the annual review determination is an objective and factual one—it serves to determine whether Plaintiff has debriefed or not. Hernandez, 2011 WL 2910710, at *8.  Thus, the review by the CO III is sufficient as it allows Plaintiff to indicate if he has, in fact, debriefed or if he desires to.  As to Plaintiff's claim that due process requires more, such as evidence that he poses a danger to other inmates, the Hernandez Court held that prison officials are not required to make such an individual determination to retain an inmate in administrative segregation; "the initial

1   validation—which [the plaintiff] has not contested—is sufficient ground for retention." Id.

2   (citing Hewitt, 459 U.S. at 477 n. 9 (periodic reviews do not require officials to permit the

3   submission of addition evidence), and Madrid v. Gomez, 889 F. Supp. 1146, 1278 (N.D. Cal.

4   1995) (approving periodic review and noting that "lack of continuing evidence of gang

5   membership or activity is simply considered irrelevant since the justification for

6   administrative segregation is the fact of gang membership itself, not any particular behavior

7   or activity")).  On this point, Plaintiff's reliance on Toussaint is misplaced.  He cites to that

8   portion of the opinion stating that retention of a prisoner in administrative segregation must

9   be based on facts relating to that particular prisoner (see Doc. 58 at 18-19).  But that same

10  portion of the opinion explains that those "facts relating to a particular prisoner . . . will have

11  been ascertained when determining to confine the inmate to administrative segregation . . . ."

12  Toussaint, 801 F.2d at 1101, citing Hewitt, 459 U.S. at 477 n. 9.  Like the plaintiff in

13  Hernandez, Plaintiff does not allege that he was denied due process in the initial

14  determination to confine him in administrative segregation (Doc. 50 at 8).  Further, Plaintiff

15  does not dispute Defendant's evidence that he can renounce and debrief at any time (Doc.

16  48, Ex. A, Dunn Decl. ¶ 66; DSOF ¶ 59; Doc. 60, PRSF ¶ 59).  And Plaintiff admits that he

17  has not requested to debrief.  To the extent that he argues debriefing is unavailable because

18  he is not an STG member and cannot provide any information, this amounts to a challenge

19  to the initial determination, and here, it has already been ascertained that Plaintiff is an STG

20  member.  See Toussaint, 801 F.2d at 1101.

21       Even though the ADC's classification policy suggests that reviews for inmates housed

22  in level-5 maximum security pursuant to an override—like Plaintiff—should occur every 180

23  days rather than annually, the policy has no bearing on the risk of an erroneous deprivation

24  (see Doc. 32, Ex.4, Def. Interrog. Resp. No. 3 (ref. DO 801 § 801.10-1.8)).  Defendant's

25  failure to comply with his own policy, standing alone, does not amount to a constitutional

26  violation.  More importantly, Defendant demonstrates that Plaintiff may request to debrief

27  at any time—not just at the time of his annual review (Doc. 48, Ex. A, Dunn Decl. ¶ 66).

28       In sum, the Court finds no evidence of a risk of erroneous result in Plaintiff's annual

1   review process.  See Hernandez, 2011 WL 2910710, at *9.

2        The final factor addresses the government's interest.  This Court already recognized

3   the legitimate penological interest that prisons have in stopping gang activity.  The

4   Hernandez Court stated that prison officials have an obligation to ensure the safety of staff

5   and prisoners "while operating with limited resources and addressing prison gangs, 'who

6   seek nothing less than to control prison life and extend their power outside prison walls.'"

7   Id., at *9 (internal citation omitted).  Plaintiff presents nothing to alter this finding.

8        When balancing the three Matthews factors, the Court finds that Plaintiff cannot show

9   that the process afforded him, i.e., the annual reviews with debriefing available, is

10  inadequate.  Therefore, Plaintiff's claims regarding the SDP do not affect the analysis

11  because an STG-validated prisoner is not entitled to an alternative means to exit

12  administrative segregation if annual reviews and debriefing are available and satisfy due

13  process.  See Hernandez, 2011 WL 2910710, at *7.[5]

14       Accordingly, Plaintiff's request for summary judgment on Count I will be denied, and

15  Defendant's request for summary judgment will be granted.

16  **IV.    Count II—Eighth Amendment Claim**

17       **A.    Arguments**

18            **1. Plaintiff's Motion**

19       Plaintiff asserts that if an inmate is identified as a snitch, he is subjected to a

20  substantial risk of personal injury and even death (Doc. 31 at 16-17, 19).  He further asserts

21  that debriefing requires an inmate to become a snitch and, therefore, he argues that Defendant

22  knowingly places him at a substantial risk of harm by requiring him to choose to debrief or

23

_____

24       [5]As indicated *supra*, Defendant's assertion that Plaintiff "has never applied" to
     participate in the SDP is belied by documentary evidence that he had made six requests
25   by 2010 (see Doc. 47 at 15; Doc. 60, Ex. 4).  See Fed. R. Civ. P. 11(b)(3).  The
     documentary evidence shows the basis for a denial only as to Plaintiff's last request (id.).
26   There is no evidence to refute Plaintiff's claim that he previously met the eligibility
     requirements or his other claims regarding the SDP.  Thus, while there is a question of fact
27   whether the SDP is available in practice, as long as debriefing is available in conjunction
     with annual reviews, there is no due process violation.
28

1   otherwise remain in conditions that pose an atypical hardship (id.).  Plaintiff contends that
2   Defendant's policy to place a debriefed inmate in PS is inadequate because it does not ensure
3   an inmate's safety and it also keeps the inmate in conditions that are the same as that in the
4   Browning Unit (id. at 18-19).

5                          **2. Defendant's Response/Cross-Motion**

6           Defendant states that Plaintiff has the option to leave the Browning Unit through the
7   SDP instead of debriefing, and the SDP is specifically designed so that inmates do not have
8   to provide information to prison officials (Doc. 47 at 13-14).

9           Defendant next asserts that Plaintiff merely speculates that he would be in danger if
10  he debriefed because he has not participated in debriefing (id. at 13-14).  According to
11  Defendant, speculation and a mere possibility of harm is not enough to support an Eighth
12  Amendment claim (id. at 14).  Because Plaintiff has not debriefed, Defendant argues that
13  Plaintiff does not have standing to challenge any consequences of participation (id. at 14-15).

14          Finally, Defendant asserts that the ADC has taken affirmative steps to maximize the
15  safety of debriefing inmates by placing them into PS and that this is a reasonable response
16  to any possible risk posed by debriefing (id.).  Defendant states that PS will protect a
17  debriefed inmate in all cases (id. at 15).

18                     **3. Plaintiff's Reply and Response to Defendant's Motion**

19          Plaintiff disputes Defendant's claim that PS protects inmates in all cases (Doc. 58 at
20  22).  He proffers a copy of Defendant's interrogatory response stating that PS does not
21  provide absolute protection from every harm and that PS was not meant to and cannot
22  guarantee an inmate will not be subject to violence (Doc. 60, Ex. 3, Def. Interrog. Resp. No.
23  4).  Plaintiff states that the evidence shows that Defendant is fully aware of the obvious
24  danger debriefed inmates face, yet Defendant maintains an unconstitutional policy requiring
25  inmates to face that risk or endure permanent Browning Unit confinement (Doc. 58 at 22-23).

26          Plaintiff contends that he has standing to challenge the debriefing policy because he
27  is placed in a position of choosing "between alternative perils"—indefinite confinement in
28  administrative segregation or substantial risk of harm for life, even after release (Doc. 50 at

19-20).  He argues that he has standing to challenge the alternatives that Defendant claims are available (id. at 20).  And he suggests that debriefing policy renders the option unavailable given its requirement that Plaintiff provide information he does not have (id.).

### 4.  Defendant's Reply

Defendant acknowledges that inmates labeled as snitches may be at risk in general population but asserts that, as evidenced by the policy to place debriefed inmates in PS with other debriefed inmates, he does not disregard that risk (Doc. 65 at 4-5).  Defendant argues that, consequently, Plaintiff cannot establish the subjective component required to support that Defendant was deliberately indifferent under the Eighth Amendment (id. at 5).  Defendant also argues that Plaintiff cannot succeed on a facial challenge to the debriefing policy because he cannot show the policy is "unconstitutional in every conceivable application" (id. at 7, citing Members of City Council v. Taxpayers for Vincent, 466 U.S. 789, 796 (1984)).

### B.    Legal Standard

The Eighth Amendment requires prison officials to protect prisoners from violence at the hands of other prisoners.  Farmer v. Brennan, 511 U.S. 825, 833 (1994).  When a prison official transfers an inmate who alleges that his well-being will be in jeopardy, the official's action constitutes an Eighth Amendment violation only if it can be shown that the official "acted with 'deliberate indifference' to the threat of serious harm or injury by another prisoner." Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986) (citations omitted); see also Redman v. County of San Diego, 942 F.2d 1435, 1449 (9th Cir. 1991) (en banc).  The decision to transfer must display "deliberate indifference" to the inmate's personal security.  See Redman, 942 F.2d at 1449.  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  Farmer, 511 U.S. at 837.  Therefore, to establish a violation, a prisoner must first satisfy an objective requirement—he must show that he has been transferred into "conditions posing a substantial risk of serious harm." Id.

1    at 834.  Then, he must satisfy a subjective requirement—he must show that the defendant

2    was aware of the risk and disregarded it.  Id. at 834, 837.

3         An inmate need not wait until he is actually assaulted to bring an Eighth Amendment

4    claim.  See id., 511 U.S. at 845.  Farmer did not address the point at which a risk of inmate

5    assault becomes sufficiently substantial for Eighth Amendment purposes.  Id. at 834 n. 3.

6    But the Ninth Circuit has found that the "mere threat" of future bodily harm to a prisoner

7    may not provide a basis for a cognizable Eighth Amendment claim.  See Gaut v. Sunn, 810

8    F.2d 923, 925 (9th Cir. 1987).

9         **C.    Analysis**

10        Courts have recognized that being labeled a snitch can place an inmate at a risk of

11   harm.  See Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989); see also

12   Wilkinson, 545 U.S. at 227 ("[t]estifying against, or otherwise informing on, gang activities

13   can invite one's own death sentence").  And Defendant does not dispute that inmates

14   identified as snitches may be at risk in general population.  Defendant's argument that

15   Plaintiff can avoid a snitch label by participating in the SDP instead of debriefing is

16   unsupported.  As mentioned above, there is a question of fact whether the SDP is effectively

17   available, at least to Plaintiff.  See supra, n. 5.  But the question in this case is whether

18   debriefed inmates placed in PS face a substantial risk of serious harm, as opposed to inmates

19   labeled as snitches who are housed in general population.  See Hernandez, 2011 WL

20   2910710, at *5 (distinguishing the risk of harm faced by inmates who are labeled as snitches

21   and placed in general population with those who are labeled as snitches and placed in PS).

22        Plaintiff does not submit any evidence to support that debriefed inmates who are

23   identified as snitches and placed in PS face a substantial risk of serious harm.  Rather,

24   Plaintiff's arguments focus on the "obvious" risk that a snitch label presents in the prison

25   environment generally (Doc. 31 at 17-20).  This is insufficient to establish the absence of a

26   genuine issue of material fact as to the narrower question concerning the risk of harm to

27   debriefed inmates placed in PS.  Moreover, when narrowing the question even further—as

28   to the specific risk of harm posed to *Plaintiff*—Plaintiff concedes that he has not attempted

1   to debrief; thus, he has not actually been placed in harm's way.  Consequently, Plaintiff

2   cannot demonstrate that he has been or is about to be exposed to a serious risk of harm.  To

3   the extent that Plaintiff argues that PS does not protect debriefed inmates who are labeled as

4   snitches and then released from prison, Plaintiff presents no evidence or legal support that

5   Defendant or any other prison officials have an obligation to ensure the safety of former

6   prisoners after their release from custody.  Because Plaintiff cannot meet his initial burden

7   on summary judgment on the objective prong of the deliberate-indifference analysis, his

8   motion for summary judgment on Count II will be denied.

9          Defendant does not directly address the risk of harm to debriefed inmates who are

10  labeled as snitches and placed in PS (see Doc. 47 at 13; Doc. 65 at 4).  Cf. 2011 WL

11  2910710, at *5 (the defendants introduced affidavits from ADC officials, including the

12  former Chief of Security, who testified that they were not aware of any assaults on debriefed

13  inmates in PS).  Defendant argues, however, that Plaintiff's safety concerns are speculative

14  given that he has not attempted to debrief.  As stated, without debriefing, Plaintiff is not at

15  risk of placement in PS or subject to a risk of harm.

16         Even assuming there was a question of fact on the objective prong, Defendant presents

17  evidence to demonstrate that he does not disregard the risk of harm facing debriefed inmates'

18  safety.  The record shows that a debriefed inmate is not only placed in PS, but he is housed

19  in PS only with other debriefed PS inmates (Doc. 48, DSOF ¶ 55; Ex. A, Dunn Decl. ¶ 62).

20  According to the STG Unit Supervisor, this "PS-STG" provides debriefed inmates protection

21  from other inmates who might feign the need for PS solely to gain access to harm debriefed

22  inmates in PS (id., Ex. A, Dunn Decl. ¶¶ 4, 62).  The Court finds that this is a reasonable

23  response to the potential risk of harm, and Defendant therefore establishes his initial burden

24  on summary judgment to show that he is not deliberately indifferent to Plaintiff's safety.  See

25  Farmer, 511 U.S. at 844 (finding that a prison official who responds reasonably to a risk is

26  not liable—even if the harm ultimately is not averted).

27         In response to Defendant's evidence, Plaintiff reiterates that PS was not meant to and

28  cannot guarantee that an inmate will never be subjected to violence, and he argues that there

1    are many reasons—other than debriefing—that cause inmates to attack each other (Doc. 60,

2    PRSF ¶ 55).  Plaintiff's argument is insufficient to demonstrate a disputed material fact as

3    to Defendant's deliberate indifference.  See Taylor, 880 F.2d at 1045.  Plaintiff is correct that

4    Defendant cannot guarantee that an inmate will never be subjected to violence in PS or in any

5    other housing unit.  But Defendant is not required to predict all inmate behavior; he is only

6    required to protect a prisoner from harm when is he aware of the harm or presented with facts

7    from which an inference can and should be drawn that a risk of harm exists.  See Farmer, 511

8    U.S. at 837, 841-42 (a defendant may be liable if he has actual notice of conditions that pose

9    a substantial risk of serious harm or if he is exposed to circumstantial evidence concerning

10   the risk and "must have known" about it).

11        In sum, Plaintiff fails to present any specific facts or evidence to show a genuine issue

12   of material fact on the subjective prong of the deliberate-indifference analysis.  See

13   Matsushita, 475 U.S. at 587.  As such, he cannot demonstrate that debriefing violates his

14   Eighth Amendment rights, and Defendant is entitled to summary judgment on Count II.  The

15   Court need not address the parties' remaining arguments concerning qualified immunity and

16   damages.

17   **IT IS ORDERED:**

18        (1) The reference to the Magistrate is **withdrawn** as to Plaintiff's Motion for

19   Summary Judgment (Doc. 31) and Defendant's Cross-motion for Summary Judgment (Doc.

20   47).

21        (2) Plaintiff's Motion for Summary Judgment (Doc. 31) is **denied**.

22        (3) Defendant's Cross-motion for Summary Judgment (Doc. 47) is **granted**.

23        (4) The Clerk of Court must enter judgment accordingly and terminate the action.

24        DATED this 8th day of February, 2012.

25

26

27                        Stephen M. McNamee
                          United States District Judge
28